UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 5: 22-137-DCR |
| V. | ) |
| QUINCY MARQUICE TAYLOR, | ) **MEMORANDUM OPINION** |
| Defendant. | ) **AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Quincy Taylor was convicted by a jury for possession with the intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. [Record No. 48] Taylor appealed his conviction to the Sixth Circuit, arguing (in part) that this Court's limitation on his ability to cross-examine William Howell violated his constitutional rights. [Record No. 87-1]; *United States v. Taylor*, 127 F.4th 1008 (6th Cir. 2025). The panel determined that those limitations violated the confrontation clause. More specifically, it noted that the jury did not have sufficient information to assess "Howell's bias in seeking a benefit related to his felony [possession of a controlled substance] conviction or pending felon-in-possession [of a handgun] charge." [Record No. 87-1 at 8] When weighing Taylor's interests in providing the jury with sufficient information of Howell's potential bias and motive against the government's interest to prevent such questioning to avoid unfair prejudice and a "mini trial," the panel emphasized that "without Howell, the government's case against Taylor collapses." *Id.* at 10–11. Therefore, the Sixth Circuit reversed Taylor's conviction and remanded for a new trial. *Id.* at 13.

- 1 -

In preparation for Taylor's second trial, the United States has moved *in limine* to "exclude any discussion of the underlying facts related to the now dismissed and expunged offenses [and] the specific nature of now-expunged misdemeanor offenses." [Record No. 98 at 5] For the underlying facts of those underlying offenses, it contends that they are not relevant to Howell's motive or bias. *Id.* at 6. It further argues that informing the jury that Howell was charged with the misdemeanor assault fourth degree (domestic violence) would be unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. *Id.* at 6–7. The government does not object to Taylor inquiring if "Howell received pretrial diversion based on a charge of 'felony possession of a controlled substance,'" or if he "was later charged with 'being a felon in possession of a firearm' (thereby jeopardizing his diversion agreement)" or if that charge was dismissed just days after his testimony. *Id.* at 6.

But Taylor insists that the government's suggested scope of inquiry fails to fully comply with the Sixth Circuit's remand instructions. [Record No. 108 at 5] More specifically, he argues that the underlying facts regarding Howell's 2022 and 2023 charges are "critical for the jury to get an understanding of the circumstances that led to the resolution of his cases" so that it can fully assess his motive and bias. *Id.* at 7. In addition to any benefits Howell may have hoped to receive for his testimony, Taylor claims that because Howell's charged conduct mirrors that for which Taylor was charged—it is even more crucial that the jury have access to the underlying facts. *Id.* at 8. Taylor insists that he must be able to elicit testimony concerning those two motivations (to secure favorable treatment in his own pending criminal case and to distance himself from the bag that was allegedly left by Taylor). *Id.* at 8–9.

The exclusion of the misdemeanor offenses' nature and underlying facts can be more easily resolved. For one, the Sixth Circuit did not address this issue on the merits because trial

counsel had not adequately preserved it for appeal. [Record No. 87-1 at 7] Second, to the extent that Taylor may assert that the facts surrounding the domestic violence charge are somehow relevant, Rule 403 cautions against its use. Any probative value of that information is substantially outweighed by the danger of unfair prejudice of revealing the nature of this (highly inflammatory) charge to the jury. Likewise, the probative value of underlying details concerning the paraphernalia charge are substantially outweighed by the danger of confusing the issues and wasting time.

While Taylor argues that Howell's pending charges mirrored his own, Taylor was not charged with possessing paraphernalia or for domestic violence assault. Under this mirror theory, only the controlled substance and handgun possession charges are arguably relevant. What does remain relevant is that Howell was facing those misdemeanor charges at the time of his ATF interview and had entered diversion on those charges (that was compromised following his firearm charge) at the time of his testimony. And that the state prosecutor withdrew the motion to revoke the diversion three days after Taylor was convicted by the jury. Therefore, Taylor may elicit from Howell the above but may only reference those misdemeanor charges and (now expunged) convictions as "two misdemeanors."

To provide context to Taylor's argument that the specific facts surrounding the felony charges (controlled substance and handgun possession) must be provided to the jury, the undersigned will turn to Taylor's renewed motion for a show cause order. [Record No. 109] The Court granted Taylor's *ex parte* motion for a subpoena to obtain Howell's state court documents from his 2022 charges and now expunged convictions. [Record Nos. 95–96] However, Kentucky Revised Statute 431.076(6) mandates that, after expungement, the state court and other agencies "shall reply to any inquiry that no record exists in this matter." And

so, despite the subpoena duces tecum, the Gallatin County Clerk refused to confirm that the record existed and, therefore, refused to turn over any documents.

Taylor then submitted a motion for an order against the Gallatin County Clerk and Kentucky Administrative Office of the Courts which would require them to show cause why they should not be held in contempt for failing to produce those records. [Record No. 101] During the June 16, 2025, pretrial conference, counsel for Taylor argued that these records were necessary because they may reveal direct evidence of a *quid pro quo* agreement between the state prosecutor and Howell. Counsel opined that perhaps those court files contained a record that exposes that Howell was promised leniency or other benefits for testimony. Avoiding the supremacy issue, the Court denied Tayor's first motion for an order to show cause during the hearing noting that, at this juncture, it is speculation that the court record would show more than what is already within Taylor's possession to impeach Howell. However, the Court made clear that Taylor was free to subpoena those individuals who refused to produce or acknowledge the state court files to testify.[1]

Following that hearing, Taylor's response to the government's motion *in limine* raised an additional bias and motivation theory: Howell was trying to distance himself from Taylor's charges (and the drugs and firearm found at the scene of the accident) by cooperating with and testifying for the prosecution. [Record No. 108 at 8–9] And because Howell was later charged with controlled substance and handgun possessions (and Taylor was charged with similar offenses)—that provided motivation to testify against Taylor lest Howell be accused of

---

[1] Tayor later subpoenaed two individuals from the Gallatin County Courthouse to testify during trial. [Record No. 112]

planting those items for his own protection.[2]  But Taylor presents no argument about what possibly could be unearthed in the court records that would make the specific facts surrounding the 2022 charges relevant to that theory.[3]

In the government's reply, it concedes that Taylor is free to present this "alternative suspect theory" to the jury.  However, it argues that Taylor may not do that by using the underlying facts of Howell's charges that occurred *five months after* the car accident that was the impetus for Taylor's charges.  [Record No. 110 at 4–5]  It contends that this is a shrouded attempt to elicit impermissible propensity evidence upon which the jury could be led to conclude that because Howell was left alone with the back bag/sock cap and was later charged with similar crimes then perhaps he planted the items for which Taylor was charged.  *Id.* at 5.

Notwithstanding the propensity issue, the United States asserts that Rule 403's balancing still weighs against allowing inquiry into the specific facts surrounding Howell's (now dismissed) controlled substance possession charge.  [Record No. 110 at 5]  Along with arguing that substantial prejudice would result, it also claims that such evidence would "'spawn a mini-trial . . . . just so that the jury could meaningfully determine what weight, if

---

[2]  Presumably, Taylor's renewed motion for a show cause order against the state court clerk is premised on this mirror theory.

[3]  The undersigned is mindful of the fact that Taylor has been unable to procure the state court records for the 2022 charges.  That said, the likelihood that his alternative suspect/mirror theory would be supported in those records is remote.  Sure, it is possible that the underlying facts of the felony charge *could* reveal that the substance was found in a black sock cap after first being hidden by Howell.  However, the confrontation clause has limits and does not entitle Taylor to a fishing expedition.  Further, the Court is not inclined to raise a supremacy issue in ordering the Commonwealth of Kentucky to violate its own statute on the remote possibility that those records support Taylor's theory.

any, to give this evidence in assessing Defendant's guilt or innocence.'" *Id.* at 5–6 (quoting *United States v. Ekiyor*, 89 F.Supp.3d 928, 935 (E.D. Mich. 2015)).

During Taylor's first trial, his attorney was limited to asking Howell whether he had been convicted of a felony and whether he had been promised anything in exchange for his testimony. The Court did not allow inquiry concerning the pending firearm charge because it was not a conviction under Rule 609. The Sixth Circuit determined that the limitation prevented the jury from having enough information to assess Taylor's bias or improper motive theory. [Record No 87-1 at 9]

Following remand, the government does not object to Taylor inquiring whether (1) "Howell received pretrial diversion based on a charge of 'felony possession of a controlled substance"; (2) he "was later charged with 'being a felon in possession of a firearm' (thereby jeopardizing his diversion agreement)"; or (3) that charge was dismissed just days after his testimony. [Record No. 98 at 6] However, it does object to eliciting underlying facts to the now dismissed 2022 charges.

But the government's requested limitation does not account for the penalties Howell faced for his 2022 charges (and potential revocation of his diversion agreement). The Sixth Circuit's opinion explained that the limitations in the first trial "could not reveal the penalties Howell faced for the charge, the penalty he received, and whether Howell sought or anticipated leniency in exchange for his cooperation in Taylor's prosecution." [Record No. 87-1 at 9–10] In support, it referenced several cases in which the defendant was allowed to elicit the penalties the witness faced at the time of testifying. [Record No. 87 at 9–10] (citing *United States v. Callahan*, 801 F.3d 606 (6th Cir. 2015) (showing that defendant was allowed to cross-examine witness regarding whether he would receive more time for substantive offense than lesser

charge for which he was ultimately charged); *United States v. Fields*, 763 F.3d 443, 464 (6th Cir. 2014) (explaining that court still allowed "extensive testimony regarding [the witness's] potential bias," including that . . ."he was at that time facing charges in state court amounting to up to 96 years' imprisonment"); *Latimer v. Burt*, 98 F. App'x 427, 431 (6th Cir. 2004) (finding no constitutional violation where court limited cross-examination to the existence of pending charges and their penalties, because that information "allowed the jury to know why [the witness] might be testifying for the prosecution—in return for leniency on those charges—and how strongly those pending charges might be motivating him")). Thus, Taylor will be permitted to elicit from Howell what penalties he faced for his 2022 charges and what penalty he faced if the state prosecutor had not dismissed his handgun possession charge and withdrawn its motion to revoke his diversion. These inquiries allow the jury to assess the *degree* of his potential motivation and bias. The same is true for whether Howell sought or received leniency in exchange for his testimony.

Thus, to the extent that the government seeks to exclude underlying facts of the 2022 conviction which include the penalties Howell faced and what he hoped to gain in exchange for this testimony, its motion will be denied. The motion, however, will be granted with respect to identifying the nature of his two misdemeanor convictions and any other speculative underlying facts that may support Taylor's alternative suspect/mirrored offenses theory under Rule 403 because any probative value is substantially outweighed by a danger of unfair prejudice and of confusing the jury.

As a result, Taylor's renewed motion for an order to show cause will also be denied. With the scope of the inquiry allowed, the jury will have sufficient information to assess Howell's potential bias, prejudice, or motivation to testify. Further, even without the

additional state court records, Taylor has sufficient information at his disposal to impeach Howell, if needed. For example, Taylor has at the ready: (1) Howell's state felony possession of a controlled substance law enforcement citation, subsequent guilty plea and pretrial diversion agreement, and expungement order; (2) a certified video copy of Howell's May 19, 2023 (three days after Taylor's guilty verdict) hearing during which the state prosecutor dismissed his felon in possession of a handgun charge and withdrew the corresponding diversion violation; (3) an audio recording of the interview between Howell and ATF agents wherein Howell inquired twice concerning what he will receive in exchange for his cooperation and testimony; (4) Howell's state CourtNet docket for the 2022 and 2023 cases which lists the charged offenses; and (5) subpoenaed witnesses from the Gallatin County Court. And finally, the government asserted during the pretrial conference that if Howell denied the authenticity of the documents he provided, the federal agent who received them could be called to testify. Therefore, in addition to the potential constitutional issue that would arise in granting Taylor's motion, the state court records are unnecessary under these circumstances.

Having considered the matter and being sufficiently advised, it is hereby

**ORDERED** as follows:

1. The United States' motion *in limine* [Record No. 98] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

2. Defendant Quincy Taylor's renewed motion for a show cause order [Record No. 109] is **DENIED**.

Dated: July 3, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky